UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SIDNEY ROGERS,<br><br>Defendant. | Case No. 25-CR-188 (TJK) |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. The defendant, Sidney Rogers, is before this court after pleading guilty to one count of Unlawful Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). For the reasons that follow, the United States respectfully requests that the court sentence the defendant to a term of 57 months' imprisonment. This sentence is at the bottom of the guidelines range calculated by U.S. Probation.[1] Further, the United States is asking for three years of supervised release.

**I.   FACTUAL BACKGROUND**

The factual proffer to which the defendant agreed as part of his September 22, 2025, guilty plea establishes the following uncontested facts:

On Monday June 4, 2025, at approximately 5:56 PM, Officer Brian Lafranchise of the Metropolitan Police Department (MPD) Seventh District was sitting in his police cruiser on Morris Rd SE at the stop light at the intersection of Morris Rd SE and Martin Luther King Jr Ave SE. While waiting for the light to turn green, Officer Lafranchise witnessed Rogers operating a black

---

[1] In the plea agreement, the government estimated the defendant's criminal history as IV.  U.S. Probation calculated the defendant's category as V.  With a Criminal History Category of IV and an Offense Level of 19, the range is 46-57.  With a Criminal History Category of IV and an Offense Level of 19, the range is 57-71.

1

and neon yellow all-terrain vehicle (an "ATV") traveling northeast bound across the intersection of Morris Rd SE and Martin Luther King Jr Ave SE, perpendicular to Officer Lafranchise's marked police cruiser. Officer Lafranchise followed Rogers and observed that Rogers pulled over and parallel parked in between two cars 2100 Martin Luther King Jr Ave SE.

Officer Lafranchise parked his cruiser near Rogers and began to approach Rogers, who then turned the throttle on the ATV and rapidly accelerated forward, colliding immediately into a parked vehicle in front of him, causing damage to that vehicle's rear passenger side bumper.



*Figure 1: Image of ROGERS on ATV Crashed into Parked Vehicle[2]*

Rogers then fled on foot with a firearm and ammunition in his waistband. After a brief

---

[2] The images set forth in this fact section are taken from the Complaint filed on June 24, 2025 (ECF 1) and were not depicted in the Statement of Offense (ECF 21).

chase, Officer Lafranchise was able to stop Rogers. Officer Djunga arrived and pulled the firearm from Rogers' waistband. The firearm was a black and tan P80 with serial number AARP414 on the slide. The firearm had one 9mm Luger round in the chamber.



*Figure 2: Image of ROGERS with Firearm in Waistband*

In addition, Officer Ogbourne found a broken black Glock 17 magazine with a capacity of seventeen (17) rounds along with sixteen (16) 9mm Luger rounds across the street of 2100 Martin Luther King Jr Ave SE by the bus stop at the northwest corner of the intersection of Martin Luther King Jr Ave SE and W St SE, which was directly in Rogers' flight path. The damage to the magazine was consistent with having been dropped.



*Figure 3: Image of Broken Magazine in ROGERS' Flight Path*

Review of law enforcement databases revealed that the defendant was not licensed to possess a firearm in the District of Columbia.

At the time of the offense, Rogers had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in D.C. Superior Court Case number 2022-CF2-2003585. Rogers knew that the crime was punishable by a term exceeding one year because he had, in fact, received a sentence exceeding one year.

No firearms or ammunition are manufactured within the District of Columbia and therefore the recovered firearm and ammunition traveled in and affected interstate commerce.

## II.   PROCEDURAL HISTORY

On June 24, 2025, a magistrate judge signed a criminal complaint, charging Rogers with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). (ECF 1). On July 3, 2025, a federal grand jury returned a two-count indictment, charging the defendant with violation of 18 U.S.C. § 922(g)(1) in Count One and violation of 22 D.C. Code § 4503 in Count Two. (ECF 14).  On September 22, 2025, Rogers pled guilty pursuant to a negotiated agreement. (ECF 20). Under the agreement, Rogers pled guilty to Count One of the Indictment in exchange for the government agreeing to dismiss Count Two. (ECF 20).

## III.   LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007).  The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).  The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal

5

    conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3) the kinds of sentences available;

  (4) the kinds of sentence and the sentencing range established for –
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      (i) issued by the Sentencing Commission ...; and
      (ii) that, . . . are in effect on the date the defendant is sentenced; ...

  (5) any pertinent policy statement –
    (A) issued by the Sentencing Commission ... and
    (B) that, . . . is in effect on the date the defendant is sentenced.

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

## IV. UNITED STATES' ANALYSIS OF THE SENTENCING GUIDELINES

### A. The Defendant's Total Offense Level is 19

Rogers' total offense level is 19 under the calculations listed below:

*Count One: 18 U.S.C. § 922(g)(1)*

| | | |
|---|---|---|
| U.S.S.G § 2K2.1(a)(4)(B) | Base Offense Level | 20 |
| U.S.S.G § 3C1.2 | Reckless Endangerment | +2 |
| U.S.S.G. § 3E1.1 | Acceptance of Responsibility | - 3 |
| | **Offense Level** | **19** |

The base offense level for Count One is 20 under U.S.S.G. §2K2.1(a)(4)(B) because, as discussed below, the offense involved a semi-automatic firearm described in 26 U.S.C. 5845(a)

6

and he had been convicted of a prohibited offense at the time he committed the instant crime. A two-point enhancement pursuant to U.S.S.G § 3C1.2 is applicable here because the defendant tried to flee on an ATV, crashed the ATV into a civilian's car and then ran into a busy street with a firearm in his waistband. Because he ran from police, he ended up dumping 16 rounds of live ammunition into the street.

Three points are deducted for acceptance of responsibility under U.S.S.G. §3E1.1(b), for a **total offense level of 19**.

### B. The Defendant's Criminal History Category is V, and His Guidelines Range Is 57-70 Months' Imprisonment

The government concurs with Probation's assessment of Rogers' criminal history, as set forth in the PSR. U.S.S.G. § 4A1.1 governs the calculation of a defendant's criminal history for Guidelines' purposes. Section 4A1.1 assigns "points" for each of defendant's prior sentences of imprisonment; the number of criminal history "points" assigned to each sentence depends on the severity of the sentence and when it was imposed. U.S.S.G. §§ 4A1.1(a)-(d). As reflected in the PSR, the defendant's total criminal history score is eleven (11), establishing a criminal history category of V. *See* PSR at 18, ¶40.

With a criminal history category of V and a total offense level of 19, Rogers' guidelines range is 57 to 70 months' imprisonment. Consistent with the range anticipated in the plea agreement, the government will cap its allocution at 57 months of imprisonment.

### V.    THE GOVERNMENT'S SENTENCING RECOMMENDATION

The crime at issue here merits 57 months of incarceration. In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the desire to avoid

7

unwanted sentence disparities, § 3553(a)(6).

### A. Nature and Circumstances of the Offense

This offense was serious, dangerous, and entirely avoidable. Rogers knowingly possessed a loaded semi-automatic firearm, with a round chambered and an extended-capacity magazine, in a busy neighborhood of the District of Columbia. Rogers had stuffed the firearm in his waistband and was riding an ATV through the busy streets in violation of traffic laws. That conduct alone possessed a substantial risk to the public. *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence").

But the danger did not stop there. When confronted by law enforcement, Rogers fled. First, he tried to use the ATV to facilitate his escape, ramming it into a parked vehicle. Once he crashed, he took off on foot, ignoring officer commands and weaving through traffic. It was during this flight that the defendant dropped a loaded magazine with 9mm ammunition that scattered into the road. When officers finally detained Rogers and pulled the firearm from his waistband, the firearm was loaded with a round in the chamber. Even apart from the firearm itself, the defendant's flight and stop in the middle of the road disrupted traffic right next to a busy intersection. This flight in a populated area is not a passive act— it is precisely the type of conduct that creates an unjustifiable risk of catastrophic harm. The firearm could have discharged upon the ATV crash, and the ammunition could have been recovered by a bystander, or even been accessed by a child. Rogers' conduct therefore escalated an already dangerous situation into one involving reckless

endangerment of the public and law enforcement alike. And all of this, while on supervision for another firearm offense.

The firearm in question was a black and tan P80 semi automatic handgun that was ready to fire—with a round in the chamber—and 16 rounds in an extended magazine; those were 17 rounds that could have been ready to fire into the public space. (ECF 20 at 2-3; *see also* Figure 4, below).



*Figure 4: Image of Firearm Recovered from ROGERS with Round from Chamber*

Although no one was injured, the absence of tragedy here was a matter of luck, not restraint. The Guidelines here properly account for this heightened risk through the reckless-endangerment enhancement, and the facts of this case fall squarely within its intended scope.

**B. The History and Characteristics of the Defendant**

Rogers' criminal history tells a more a lengthy story of firearm possession and discharge, as well as failure to comply with release conditions. As noted in the PSR, in 2011, Rogers admitted to discharging a firearm into the open window of an apartment. *See* PSR at ¶32. In connection with his supervision for that matter, he failed to report for drug testing multiple times. *Id*. Later, in 2022, the defendant was convicted in D.C. Superior Court of Unlawful Possession of a Firearm. *See* PSR at ¶37. Similar to the instant case, when police attempted to make contact with him, he fled in a motorized vehicle, driving his vehicle into a cement barrier. *Id*. He then threw a satchel containing a firearm out the window. *Id*. He was released to supervision on September 19, 2024, after which point he failed multiple drug tests and failed to report to multiple appointments mandated by probation. *Id*. The temporal proximity of his most recent case and the fact that his criminal history spans more than ten years matters is significant here. It demonstrates that prior court supervision, leniency and intervention failed to deter him from returning to precisely the same dangerous conduct. In addition, to his convictions related to firearms, Rogers has prior convictions for forgery and theft by false pretense involving a pattern of using counterfeit bills to pay for restaurant meals in Delaware. *Id*. at ¶34. Rogers' consistent pattern of criminal conduct over his adult life is very concerning.

In terms of his personal life, Rogers' childhood, while not idyllic appeared to be underpinned by a supportive family. By his own description, his financial needs were met, he did not suffer abuse or neglect, and none of his family members have a criminal history. *Id*. at ¶52. Though he admittedly has had some mental health challenges, it appears that he was receiving treatment. *Id*. at ¶72. In terms of work, Rogers reported detailing cars—a skill that makes it all the more troubling that he would carry a firearm with an extended magazine when he otherwise had meaningful work to do. *See id*. at ¶94.

The defendant's conduct placed not only himself, but others in a volatile and dangerous situation. Though he certainly has not had a charmed life, he repeatedly has chosen to carry firearms and flout his conditions of release. Put simply, when the defendant is in the community, he arms himself. His conduct reflects a repeated and knowing disregard for the law and for the safety of others.

### C. The Need for the Sentenced Imposed to Afford Adequate Deterrence

A custodial sentence is necessary to achieve both specific and general deterrence. The defendant has already demonstrated that prior firearm prosecution and supervision were insufficient to prevent him from reoffending. A meaningful term of incarceration is therefore necessary to interrupt this cycle and to protect the public from further dangerous conduct. General deterrence is equally important. Illegal firearm possession, particularly involving loaded weapons and flight from police, poses a profound risk to the community. A guidelines sentence communicates that such conduct will be met with firm and predictable consequences.

As noted previously, this is not the Rogers' first firearm offense. Given his history, it is clear that Rogers did not learn from his past conduct. Therefore, a term of incarceration is also necessary to deter Rogers from unlawfully possessing firearms in the future.

### D. The Desire to Avoid Unwanted Sentence Disparities

Finally, one of the goals of the Guidelines is to avoid sentence disparities among similarly situated defendants. According to data collected by the United States Sentencing Commission, of the firearms cases reported to the Commission in 2024 where the defendant was sentenced pursuant to U.S.S.G. § 2K2.1, was in Zone D and had a Criminal History Category of V, the median incarceration length was 57 months' imprisonment, and the median incarceration length was also 57 months' imprisonment. *See* United States Sentencing Commission, Interactive Data

11

Analyzer, "Sentencing Outcomes – Sentence Length," https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited on January 7, 2026). The average and median lengths of supervised release are 36 months, while the median is 36 months. *Id.*

As evidenced by the Sentencing Commission's data, the government's requested sentence of 57 months' imprisonment is measured, reasonable, driven by data, and squarely in line with sentences given to similarly situated defendants. It also is warranted by the seriousness of the offense, protects the public, and promotes respect for the law.

## CONCLUSION

For the foregoing reasons, the United States respectfully recommends that the court sentence Sidney Rogers to 57 months' imprisonment, to be followed by three years of supervised release.

Respectfully Submitted,

Jeanine Ferris Pirro
United States Attorney

By:   */s/ Caelainn Carney*
CAELAINN CARNEY
Assistant United States Attorney
N.Y. Bar No. 5751672
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-714-6433
Email: caelainn.carney@usdoj.gov